Hillsborough
No. 87-431

FLAGS I, INC.

v.

PHILIP J. KENNEDY

February 6, 1989

*Cleveland, Waters and Bass P.A.*, of Concord (*Craig L. Staples* and *David W. Rayment* on the brief, and *Mr. Staples* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*James E. Higgins* and *John A. Rachel* on the brief, and *Mr. Rachel* orally), for the defendant.

JOHNSON, J.   The plaintiff, Flags I, Inc. (Flags), appeals from an order of the Superior Court (*Goode*, J.) dismissing counts II and III of its bill in equity for failure to state a claim upon which relief can be granted. Stating negligent misrepresentation and breach of contract, respectively, as grounds for relief, counts II and III seek return of stock issued to the defendant, Philip J. Kennedy, and recovery of consequential and enhanced compensatory damages and attorney's fees and costs. On appeal, Flags contends that the superior court incorrectly interpreted RSA 293-A:19 to bar these counts. For reasons that follow, we agree with Flags' contention and therefore reverse and remand.

Flags' bill in equity states the following facts. Flags is a New Hampshire corporation, incorporated in April, 1985, for the purpose of "promoting, investigating, financing, marketing, and otherwise developing" real estate projects in Hooksett. Prior to Flags' incorporation, David R. Titcomb, now a Flags stockholder, and various of his associates met and entered into discussions with the defendant Kennedy.

The bill alleges: (1) that, in the course of these discussions, Titcomb and his associates received various factual representations and promises from Kennedy, in exchange for which they issued

Kennedy 100 shares of Flags stock; (2) that they subsequently discovered that each of Kennedy's factual representations was materially false and misleading; and (3) that Kennedy ultimately breached each of his promises.

Among the factual representations that Kennedy allegedly made were representations regarding:

> "[his] successful and varied background in business and industry; [his] prior experience in real estate development projects . . . , [his] past experience as a real estate broker; [his] numerous business contacts and relationships in New Hampshire . . . , [his] numerous banking contacts and relationships in New Hampshire and elsewhere . . . , [his] experience in the area of marketing . . . , and [his] sound financial position . . . ."

The bill further alleges that Kennedy failed to apprise Titcomb and the others of facts regarding his past employment and experience that would negatively have affected their decision to involve him in their endeavor. The bill asserts that the promises received from Kennedy included promises to assist the corporation in marketing, promoting, and financing its projects.

As grounds for relief from these claimed misrepresentations and breaches, Count I of Flags' bill alleges intentional misrepresentation, Count II alleges negligent misrepresentation, and Count III alleges breach of contract. As noted above, Kennedy moved to dismiss counts II and III for failure to state a claim. The trial court granted this motion, without opinion, on October 8, 1987, and Flags appealed that decision to this court.

■■ In reviewing a trial court order granting a motion to dismiss, we assume that all facts the plaintiff has properly pleaded are true and construe all reasonable inferences from those facts in the plaintiff's favor. *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985). The only issue for our decision is whether the facts and inferences so viewed "would constitute a basis for legal relief." *Id.* If they would, the motion to dismiss was improperly granted.

■ Kennedy's motion to dismiss did not challenge the facial sufficiency of Flags' allegations of negligent misrepresentation and breach of contract. Instead, it asserted that the superior court should dismiss counts II and III for failure to allege fraud in the transaction. Citing RSA 293-A:19, it asserts that, absent fraud, a corporation may not rescind a stock transfer on the ground that its directors overvalued the consideration given for stock. On appeal

from the superior court's decision granting Kennedy's motion, Flags contends that RSA 293-A:19 is inapplicable to its claims because counts II and III do not allege that its directors overvalued the consideration Kennedy paid, but that Kennedy never paid the consideration he promised.

RSA 293-A:19 provides:

> "The consideration for the issuance of shares may be paid, in whole or in part, in cash, in other property, tangible or intangible, or in labor or services actually performed for the corporation. When payment of the consideration for which shares are to be issued shall have been received by the corporation, the shares shall be deemed to be fully paid and nonassessable. Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of a corporation. *In the absence of fraud in the transaction, the judgment of the board of directors or shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive.*"

(Emphasis added.) Although we have not previously interpreted this language, we agree with Flags that it is the statutory embodiment of what is known as the "good faith" rule of valuation. This rule is a standard of valuation for consideration, other than money, given in exchange for shares of stock. It is part of the common or statutory law of many States and has been extensively discussed by both commentators and State and federal courts.

The "good faith" rule recognizes that there may be honest differences of opinion as to the value of non-monetary consideration offered for stock. 11 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5214.1, at 480 (Perm. ed. 1986); *see also Burge v. Frey*, 545 F. Supp. 1160, 1172–73 (D. Kan. 1982). The rule protects both the directors and the stockholders who received the stock in question by prohibiting suits to recover stock based on the contention that the directors overvalued the consideration given. *See* FLETCHER *supra*. The rule allows such suits only where the charge is that the directors' alleged overvaluation was fraudulent. *See* FLETCHER § 5214.1, at 479–80; *see also Burge supra; Trotta v. Metalmold Corp.*, 139 Conn. 668, 673–74, 96 A.2d 798, 801 (1953).

We agree with Flags that the statutory "good faith" rule contained in RSA 293-A:19 does not preclude a suit to rescind a stock transfer in circumstances like those alleged here. Flags does not claim that its directors overvalued the representations and promises that Kennedy allegedly gave in consideration for the stock

issued to him; it claims that it never received anything of value in exchange for the stock because the representations were materially false and the promised actions were never performed. Thus it is not the accuracy of the directors' determination of the value of the consideration that is at issue, but whether Kennedy performed his side of the bargain by providing any consideration at all. *See Burge,* 545 F. Supp. at 1172–73.

■■ The situation that the last sentence of RSA 293-A:19 contemplates did not come into play in this case. Moreover, the interpretation that Kennedy suggests would conflict with the purpose of the statute as a whole. RSA 293-A:19, which also prohibits stock transfers in exchange for promissory notes and future services, is meant to protect stockholders and creditors from depletion of the corporation's capital by preventing the corporation from issuing stock without payment in return. It certainly does not provide a shield from an action by the corporation for rescission or damages to the stockholder who has failed to pay the consideration he promised. *See Bell v. Aubel,* 151 Pa. Super. 569, 573–74, 30 A.2d 617, 619 (1943). *Scovill v. Thayer,* 105 U.S. 143 (1881), and *Dickerman v. Northern Trust Company,* 176 U.S. 181 (1900), which Kennedy discusses at length, are not to the contrary. Each addresses an alleged overvaluation of consideration, not a charge that agreed-upon consideration was never paid. *Scovill, supra* at 153–54; *Dickerman, supra* at 202–03.

Kennedy argues that, even if RSA 293-A:19 does not prohibit Flags' claims for negligent misrepresentation and breach of contract, dismissal was justified because, contrary to the further requirements of RSA 293-A:19, Flags illegally issued the stock in question in exchange for future services. He appears to argue that Titcomb, as Flags' principal stockholder, bore the responsibility for insuring that Flags complied with the statute and was the only party who would feel the consequences of any depletion of corporate assets if Flags did not. He contends that, as consenting parties to an illegal contract, he and Flags are *in pari delicto.* Rather than aid either party, he asserts, the court should leave them in the position in which they have placed themselves.

The suggestion that Flags may not now sue to recover stock that it agreed to exchange for a promise of future services is simply incorrect. As noted above, the provision of RSA 293-A:19 that prohibits exchange of corporate stock for future services is intended to protect stockholders and creditors from the depletion of corporate assets. Even if Titcomb is Flags' controlling stockholder,

and the decision to deplete assets was his own, there remain creditors who are entitled to the statute's protection.

We therefore hold that the superior court improperly dismissed counts II and III of Flags' suit on the basis of RSA 293-A:19. This does not mean, of course, either that Kennedy actually offered the alleged representations and promises as consideration for the stock he received or that, if he did, he in fact breached his side of the agreement. It means that RSA 293-A:19 does not prohibit recovery for the claims Flags' bill in equity asserts. Because we so hold, we need not address Flags' additional arguments in opposition to dismissal.

*Reversed and remanded.*

All concurred.